## MICHAEL ELISEUSON v. JAMES FRAYSETH AND ANOTHER.

187 N. W. (2d) 685.

May 28, 1971—No. 42555.

*Spellacy & Lano* and *O. C. Adamson II,* for appellant.

*Harold E. Vanden Bossche, O'Leary, Trenti, Berger & Carey,* and *Tom H. Carey,* for respondents.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Odden, JJ.

NELSON, JUSTICE.

Appeal from a judgment of the district court dismissing Michael Eliseuson's alleged cause of action upon the motion of defendants, James Frayseth and William Frayseth.

The pertinent facts are as follows: On August 27, 1958, defendant James Frayseth, then 15 years of age, accidentally shot plaintiff, then 14 years of age, with a .22-caliber pistol. James was at that time vacationing with his father, defendant William Frayseth, in Minnesota where plaintiff resided. Both defendants were then and still are residents of the State of Michigan and have never resided in Minnesota.

The bullet fired by James struck plaintiff's breast and entered and passed through the vital chest organs, where it finally came to rest close to and lying anterior and to the right center of the first lumbar vertebra. Plaintiff was hospitalized but the bullet was not removed. The wound healed and plaintiff resumed his usual activities with no apparent difficulties.

Relying on the treating physician's medical report, which stated that plaintiff "has suffered no complications or no residual effects from the injury caused by the gunshot wound," plaintiff's parents agreed to a settlement of his claim against defendants. This settlement was accomplished without a lawsuit being commenced by means of negotiations between plaintiff's counsel and defendants and their insurer. On April 8, 1961, plaintiff and his father petitioned the district court for approval of a settlement of $4,000, which was approved and distributed according to law, the net funds received being placed with a financial institution. Releases were executed for all claims, known and unknown, suspected and unsuspected, as a result of the accident of August 27, 1958. Plaintiff, with the permission of the district

court, withdrew from the funds periodically until they were depleted in 1965.

In June 1969, plaintiff was examined at the University of Minnesota Hospitals after complaining of abdominal pains. An arteriogram revealed an apparent aneurysm of the abdominal aorta, behind which was lodged the bullet. On June 13, 1969, the aneurysm was successfully removed under general anesthesia, and postoperative diagnosis was "traumatic aneurysm abdominal aorta, secondary to gunshot wound abdomen."

Subsequently, in November 1969 plaintiff served upon defendants in Michigan a summons and complaint pursuant to Minn. St. 543.19, seeking to have the minor's settlement set aside and to recover damages as a result of the accident of August 27, 1958. The complaint alleged that plaintiff and his parents had relied upon the medical report of the treating physician but that the parties were mutually mistaken and that plaintiff had developed severe internal injuries as a result of the presence of the bullet, requiring extensive medical care and resulting in permanent disability.

Defendants moved by special appearance to have service of the summons and complaint declared null and void. The matter was submitted upon affidavits and memoranda, and after consideration, the trial court entered its findings dismissing plaintiff's cause of action.

■ This court has repeatedly held that the trial court may, for good cause, review an order approving a minor's settlement made pursuant to Minn. St. 540.08, and that if, upon such review, it appears that such settlement was based upon a mutual mistake of fact, it may vacate and set aside its order of approval. Dasich v. La Rue Mining Co. 126 Minn. 194, 148 N. W. 45; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Clark v. Gronland, 221 Minn. 505, 23 N. W. (2d) 169; Larson v. Stowe, 228 Minn. 216, 36 N. W. (2d) 601, 8 A. L. R. (2d) 455.

The settlement approved on April 8, 1961, and signed by plaintiff's father stated:

"It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected."

It is not necessary to discuss whether this language bars an action by plaintiff to set aside the settlement and collect further damages in light of the fact that we must hold that the action is barred by the statute of limitations.

■ Plaintiff argues that the 6-year statute of limitations as to tort actions (§ 541.05) was tolled in this case by reason of the following part of § 541.13:

"* * * [I]f, after a cause of action accrues, [defendant] departs from and resides out of the state, the time of his absence is not part of the time limited for the commencement of the action."

Defendants contend that § 541.13 has no application because defendants are not and never have been Minnesota residents.

An analysis of past cases interpreting § 541.13 is helpful in resolving this issue.

Two early Minnesota decisions, Smith v. Glover, 44 Minn. 260, 46 N. W. 406, and Foster v. Johnson, 44 Minn. 290, 46 N. W. 350, state that where the defendant is a nonresident of the state and plaintiff is a resident, an action will not be barred by the statute of limitations. However, the rule of those cases seems to be derived from the situation where the defendant had once resided in Minnesota but had subsequently left the state and resided elsewhere. Town v. Washburn, 14 Minn. 199 (268); Whalley v. Eldridge, 24 Minn. 358. We are not persuaded that plaintiff's cited cases, Way v. Colyer, 54 Minn. 14, 55 N. W. 744; O'Mulcahey v. Gragg, 45 Minn. 112, 47 N. W. 543; and Smith v. Glover, *supra,* stand for the proposition that § 541.13 tolls the statute of limitations as to nonresident defendants.

In Drake v. Bigelow, 93 Minn. 112, 100 N. W. 664, a note made payable in Minnesota was executed in New York by a resident

of that state, who, before it became due, moved to New South Wales and later to Hawaii. Ten years after the note became due, while temporarily visiting Minnesota, he was served with a summons on the note, and he defended on the ground that the action was barred by the statute of limitations. This court held that because the cause of action had arisen and accrued while defendant was a resident of New South Wales and its laws had outlawed the note, the action could not be brought against him while he was temporarily in Minnesota. Most interesting in the Drake case is the court's characterization of G. S. 1894, § 5145, which is the forerunner of § 541.13. The court there stated (93 Minn. 113, 100 N. W. 664):

"* * * Section 5145 provides two certain exceptions when the statute shall not run: First. When a *resident* of this state is temporarily out of the state at the time the cause of action accrues against him * * *. Second. If, when the cause of action has accrued against a *resident* of this state, he then departs therefrom, and resides out of the state, the statute does not commence to run until after his return. The first case applies to a *resident* only temporarily absent, and the second to a *resident* who goes away with no intention of returning." (Italics supplied.)

Further authority for the proposition that § 541.13 applies only to residents of Minnesota is found in Nelson v. Sandkamp, 227 Minn. 177, 183, 34 N. W. (2d) 640, 644, where we stated:

"* * * The words 'he departs from and resides out of the state' as used in § 541.13 are to be construed as meaning *he departs from and acquires a domicile out of the state. In other words, the statute contemplates a change of domicile as a prerequisite for tolling the statute of limitations.* In this sense, the statute has been construed as if the words 'residence' and 'domicile' are synonymous in meaning (contrary to the accepted distinction in meaning), and that a change of domicile involves a change of a person's true, fixed, and permanent home or place

of abode, to which such person intends to return whenever he is absent." (Italics partially supplied.)

Nelson v. Sandkamp, *supra*, was affirmed in Beckos v. Scholle, 236 Minn. 494, 53 N. W. (2d) 234.

It is therefore our conclusion from a review of the above cases interpreting § 541.13 that it does not apply to nonresidents of Minnesota and that the time for commencement of this action expired May 24, 1966, when plaintiff attained 22 years of age in accordance with Minn. St. 541.05 and 541.15. For further authority consistent with the above analysis regarding tolling statutes applicable to nonresidents, see Annotation, 17 A. L. R. (2d) 502.

The trial court in its memorandum does not raise or discuss the issue of whether a plaintiff may bring an independent action to vacate and set aside a minor's settlement, but only alludes to Spaulding v. Zimmerman, 263 Minn. 346, 116 N. W. (2d) 704, for the proposition that Rule 60.02(6), Rules of Civil Procedure, gives the trial court discretion to vacate settlements. Plaintiff relies on the following language in Rule 60.02 for the proposition that a motion is not the only way to set aside a settlement:

"* * * This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding * * *."

Federal Rule 60(b) has identical language, and Professor Moore in 7 Moore, Federal Practice (2 ed.) par. 60.31, has stated:

"* * * It remains clear, as it has from the beginning, that Rule 60(b) does not limit the power of a court to entertain an independent action. And since nomenclature is unimportant a proceeding for relief under 60(b) may in an appropriate case be treated as an independent action; and similarly an independent action may be treated as a proceeding under 60(b).

"* * * Nevertheless the independent action may in some cases be a more plain and adequate remedy, as when it is uncer-

tain whether a court of registration may give relief from the registered judgment under 60(b). The independent action may afford the only avenue of relief, as where the time to move for relief on the basis of mistake or fraud, for example, precludes relief under 60(b)(1) or (3)."

We agree with the above reasoning and conclude that the trial court had the discretion to vacate a settlement through an independent action as well as a motion to vacate under Rule 60.02(6).

■ In its memorandum incorporated in its findings of fact, conclusions of law, and order for judgment, the trial court states that its ruling has the result that a minor plaintiff who commences his action by service of summons and complaint and then settles his claim has more legal rights than a minor plaintiff who accepts a court-approved settlement without starting an action. The trial court's reasoning is that once an action has been commenced, the statute of limitations will never run. Plaintiff also incorporates this argument into his brief and puts forth the doctrine of equitable estoppel as his remedy for the problem.

Basically, the doctrine of equitable estoppel involves the principle that if a person in good faith relies on the conduct of another, it would be inequitable to allow the party who profits by this reliance to assert a right that he equitably should not have. Plaintiff's theory is that he relied on the minor's settlement and thus forbore bringing an action, and that therefore the defendant tortfeasors should be estopped from being allowed to assert the statute of limitations to uphold an inequitable settlement.

We cannot agree with plaintiff's argument. We find no evidence of any promises or active inducements made by defendants which caused plaintiff to forbear bringing a lawsuit. The facts of the instant case show only that a settlement was entered into by the parties without commencing a lawsuit, and we can find no legal justification for undoing that settlement.

This court's conclusion is that estoppel does not apply in the case at bar.

Affirmed.