Alan ROUSE, Respondent,

v.

DUNKLEY & BENNETT, P.A., et al., Petitioners, Appellants.

No. C6–93–777.

Supreme Court of Minnesota.

Aug. 26, 1994.

Rehearing Denied Oct. 20, 1994.

John M. Degnan, Charles E. Lundberg, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for appellants.

Thomas J. Lyons, Mary C. Ivory, Lyons Sawicki Neese, P.A., St. Paul, for respondent.

## OPINION

GARDEBRING, Justice.

Respondent in this case, Alan Rouse, filed a legal malpractice action in 1990 against the appellant law firm, Dunkley & Bennett, P.A., alleging that the firm's lawyers were negligent in representing him in a lawsuit against his former employer. Appellants Dunkley & Bennett ("the lawyers") had represented Rouse in the lawsuit, which ended in a stipulated default judgment against the former employer for $100,000.00.[1] Rouse brought claims against the lawyers for legal malpractice, breach of fiduciary duties and misrepresentation.[2] The trial court granted the lawyers' summary judgment motion in all respects.[3]

On appeal, the court of appeals affirmed summary judgment for the lawyers on most of the issues involved in the case. *Rouse v. Dunkley & Bennett,* No. C6–93–777, 1993 WL 430351 (Minn.App. Oct. 26, 1993). However, the court of appeals reversed the trial court on respondent's claim that the lawyers negligently failed to pursue a cause of action for defamation, concluding that this claim should have survived summary judgment. *Id.* at 7. The court of appeals found that Rouse had established the existence of fact issues on all of the elements of his defamation claim. *Id.* at 8–11. On appeal to this court, the only issue is whether the court of appeals correctly reversed summary judgment for the lawyers on respondent's legal malpractice claim for negligent failure to plead defamation.

Rouse was employed as a loan officer at Independent Mortgage Services, Inc. ("IMS") from February 1, 1984 to September 26, 1984. The defamation claim arises from statements Daniel Iverson, the president of IMS, made to Rouse when he terminated Rouse on September 26, 1984. Rouse claims Iverson told him he was being fired for taking two loan applications from the same applicants for two pieces of residential property and representing that the couple would owner-occupy both properties, an action that would have violated company policy and perhaps federal law. Rouse claims that this

1. Appellant's former employer had begun experiencing financial difficulties and closed its operations prior to the hearing and was present but not represented when it accepted the stipulated default judgment. Appellant subsequently collected only a portion of the judgment.

2. Rouse argues that the breach of fiduciary duties and misrepresentation claims survive this appeal even if we conclude that the trial court properly granted summary judgment for the defendant lawyers on his legal malpractice claim. In the motion before us, the lawyers moved for summary judgment in their favor "on all claims in Plaintiff's Complaint." The trial court granted the motion "in its entirety" and entered judgment in favor of the lawyers, but did not discuss its reasoning regarding the breach of fiduciary duties and misrepresentation claims in its memorandum of law. Rouse did not raise the trial court's failure to discuss these claims at the court of appeals; therefore, we conclude that they were resolved by the trial court's order and were not appealed.

3. An earlier summary judgment in this case was reversed in a prior appeal. *See Rouse v. Dunkley & Bennett,* No. C7–91–1495, 1992 WL 10709 (Minn.App. Jan. 28, 1992) (unpublished decision remanding case to district court). The trial court had granted summary judgment for the defendant lawyers, finding that Rouse was unable to establish that the lawyers' acts had caused him damage, the amount of any damage caused, or that he would have been able to collect more from his former employer than he had already collected. *Id.* at 4. The court of appeals found that the trial court improperly considered issues other than the collectibility of any judgment and reversed on the collectibility issue, finding that Rouse had shown a genuine issue of material fact. *Id.* at 7. After further discovery, the lawyers filed the renewed motion for summary judgment "on all claims in Plaintiff's complaint" from which this appeal arises.

statement was defamatory and denies that he took two loan applications from the couple in question. Iverson claims that his statement was truthful. Rouse met with the lawyers of Dunkley & Bennett in January 1985, and subsequently retained them to represent him in all claims against IMS. In July 1985, the lawyers filed a complaint that did not include a defamation claim.

Rouse claims that the lawyers allowed the two year statute of limitations on his defamation claim to expire before they told him they would not bring that claim. In a June 1987 letter to Rouse, the lawyers said that they would not bring a defamation claim on Rouse's behalf because they saw no good faith basis for doing so,[4] but did not mention that, at that time, the statute of limitations on the defamation claim had already expired. The defamatory statements were allegedly made to Rouse in September of 1984; thus, it appears that a defamation action brought after September of 1986 would have been barred by the statute of limitations.

Rouse stated in his affidavits that he inquired about bringing a claim of defamation several times before the statute of limitations expired. He also provided an affidavit from an expert stating that the lawyers deviated from the applicable standard of care in representing him in part by failing to assert the defamation claim and failing to advise him of the statute of limitations applicable to that claim before it expired. The expert also gave an opinion that any judgment on the defamation claim would have been collectible under Rouse's former employer's insurance policy, unlike the other claims that the lawyers did bring on his behalf.

As evidence that they were not the proximate cause of Rouse's failure to bring a defamation claim, the lawyers point to two letters written by respondent's son Kevin, an attorney who was advising his father during the course of the litigation. In one letter, written after the statute of limitations expired, the younger Rouse requested that the lawyers consider bringing a defamation claim after deposing the employer. He noted that a defamation claim would allow for personal liability against respondent's former employer and would trigger directors' and officers' liability insurance. In another letter, written later in response to the lawyers' refusal to bring the defamation claim, he stated that the complaint should be amended to include the defamation claim *if* Rouse's employer were to admit in his deposition to having published the allegedly defamatory statement. The lawyers assert, however, that when the employer's deposition was taken he denied repeating the statement to anyone else.

■ To prevail in a legal malpractice action, the plaintiff must prove: (a) the existence of an attorney-client relationship; (b) acts amounting to negligence or breach of contract; (c) that such acts were the proximate cause of the plaintiff's damages; and (d) that but for defendant's conduct, the plaintiff would have been successful in the action. *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983). Failure to prove any one of these elements defeats the plaintiff's case. *Id.* at 282. Here, there appears to be no dispute as to the existence of an attorney-client relationship, and, for purposes of this appeal, the defendant lawyers have acknowledged that a fact issue exists regarding their negligence.

The continued viability of this lawsuit turns on the issue of whether Rouse in fact had a viable defamation claim in the underlying action. The parties have characterized

---

4. The lawyers also offered in the letter to assist Rouse in locating other counsel without charge if he wished to pursue a defamation cause of action. Rouse, through his son, declined that offer. The lawyers now renew the argument they made to the court of appeals—that because Rouse declined their offer, he cannot show a "causal link" between their alleged negligence and his damages. Because the offer was made after the statute of limitations expired, this argument rests upon the lawyers' assertion that Rouse could have amended his complaint to include the defamation claim. The court of appeals declined to consider this argument because it was not raised in the trial court. "A reviewing court must limit itself to a consideration of only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thayer v. American Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982). Because this issue was not presented to and considered by the trial court, we also decline to consider the lawyers' argument.

this as a causation issue. We have set out the following test for proximate cause in legal malpractice cases:

> For negligence to be the proximate cause of an injury, it must appear that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then he is liable for any injury proximately resulting from it, even though he could not have anticipated the particular injury which did happen.

*Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 113 (Minn.1992). In this case, the lawyers could not have anticipated that their failure to bring a defamation cause of action was likely to result in injury to Rouse unless defamation was a viable claim in the underlying case. Therefore, the issue before us is the nature of Rouse's burden of proof at summary judgment on the issue of whether he would have been successful in the underlying action had the lawyers performed as he claims they should have. .

On appeal from summary judgment, we must determine whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The court of appeals stated that the plaintiff must demonstrate that the underlying case, here the defamation action, "*could have* been won at trial—essentially, that there was a *winable* case-within-a-case." *Rouse v. Dunkley & Bennett,* No. C6–93–777 (Minn App. Oct. 26, 1993) slip op. at 5, 1993 WL 430351 (unpublished decision) (emphasis added). This test is consistent with our prior legal malpractice cases, but we reverse because we conclude that the court of appeals incorrectly applied the test.

■ Our previous opinions on causation in legal malpractice cases have come in two procedural contexts, after a trial and after resolution by summary judgment. In cases where our review has been after a trial, the "case-within-a-case," had been tried to a jury and the underlying action recreated to determine whether the plaintiff would have succeeded, had the attorney not performed negligently. As a result, on appeal we had the benefit of jury verdicts in reviewing the proof of the viability of the underlying action. When a jury finds for the plaintiff in the underlying cause of action, the plaintiff has met her burden of showing that she would have succeeded had the attorney not performed negligently and the issue before us is whether the verdict for the plaintiff was supported by the evidence or whether a motion for judgment notwithstanding the verdict was properly denied. *Christy v. Saliterman,* 288 Minn. 144, 179 N.W.2d 288 (1970); *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686 (Minn.1980).

In this case, however, we do not have the benefit of a fact-finder's determination as to whether the plaintiff would have succeeded in the underlying action. We previously have indicated that, in such cases, this issue is usually for the jury to decide. In *Wartnick,* we reviewed summary judgment for defendant attorneys on multiple claims of attorney malpractice. 490 N.W.2d 108 (Minn.1992). We affirmed summary judgment on some of the claims on the issue of causation due to the existence of an intervening and superseding cause, but we also stated that "proximate cause is normally a question of fact for the jury." *Id.* at 115 (citing *Vanderweyst v. Langford,* 303 Minn. 575, 576, 228 N.W.2d 271, 272 (1975)). In another recent case, where the issue was whether the assertion of defenses lost by the attorneys' negligence "would have made a difference," we held that the question was for the jury to answer. *Admiral Merchants Motor Freight v. O'Connor & Hannan,* 494 N.W.2d 261, 267 (Minn. 1992).[5]

Appellant attorneys rely on *Carlson v. Fredrikson & Byron, P.A.,* 475 N.W.2d 882 (Minn.App.1991), *pet. for rev. denied,* (Minn. Oct. 31, 1991), a court of appeals decision

---

**5.** In *Admiral,* the plaintiffs had asserted that the attorneys' negligence caused them to miss an arbitration deadline and thereby lose an opportunity to present their defenses. *Id.* at 267. They presented evidence that if an arbitration proceeding had been undertaken, they would have had an additional defense that was lost by their failure to arbitrate. *Id.* They also presented evidence that even if the arbitration was unsuccessful, a large portion of their attorneys fees would not have been incurred. *Id.*

that takes a different approach to the plaintiff's burden of proving that a fact issue exists as to the causation element of a legal malpractice case at summary judgment. In *Carlson*, the trial court granted the defendant attorneys' motion for summary judgment and the court of appeals affirmed. The court ruled that to survive summary judgment on a claim that the attorneys committed malpractice in settling rather than going to trial, the plaintiff must present evidence to show that, *more likely than not*, the issue of fact *would* have been decided in his favor. *Id.* at 886. (emphasis added).

■ We disagree with the standard set out in *Carlson*. We cannot imagine what type of evidence a plaintiff in a legal malpractice action could produce at summary judgment to show that a factfinder in the underlying matter necessarily would have resolved factual disputes and credibility issues in his or her favor, nor do the defendant attorneys here suggest what that evidence would be. The *Carlson* opinion was wrongly decided to the extent that it suggested that plaintiffs must show at summary judgment that it is more likely than not that the issue of causation would be decided in their favor, and we reject that standard. We therefore hold that to survive a summary judgment motion on causation in his legal malpractice action, Rouse must show that he would have survived summary judgment on the underlying, but foregone, claim.

While our analysis is rooted in the legal principles involved, public policy considerations also support allowing clients who have foregone the right to pursue a cause of action [6] to move beyond summary judgment on causation in a legal malpractice lawsuit by showing only that they should survive summary judgment in the underlying matter. Such an approach is consistent with our opinions in *Christy Togstad* and *Admiral*, where juries decided the issue of whether the plaintiff would have succeeded through a trial-within-a-trial on the underlying case. An attorney's negligence should not force a heightened burden of proof upon a client who has been denied the ability to bring her lawsuit because her attorney, for example, allowed the claim to expire under a statute of limitations. Public policy considerations do not favor protecting these attorneys from trial. The appellants' contention that such a standard would create unlimited liability for lawyers is simply untrue; it would subject them to trial, but not necessarily to ultimate liability.

■ Evaluating the record before us in light of this standard, we find that the trial court properly granted summary judgment for the defendant lawyers. The moving party is entitled to summary judgment as a matter of law if the non-moving party completely fails to prove an element that is essential to the non-moving party's case, and for which the non-moving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The elements of defamation require the plaintiff to prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower him in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980) (citing Restatement (Second) of Torts §§ 558–559 (1977)).

In this case, Rouse bears the burden of proof on each element of his defamation claim; therefore, in response to a motion for summary judgment, he must produce sufficient evidence to show a genuine issue of

---

**6.** We recognize that this standard may not apply to cases involving transactions or where the case was tried or settled and the client now believes he could have done better but for his attorney's negligence. There are also public policy reasons for declining to subject attorneys to trials every time a client is dissatisfied with his choice to settle a lawsuit, or with his attorney's decisions when the underlying matter has already been litigated or settled, but he thinks the result might have been more favorable had the attorney advised him differently. We continue to disapprove of allowing a client who has become dissatisfied with a settlement to recover against an attorney solely on the ground that a jury might have awarded him more than the settlement. *See Glenna v. Sullivan*, 310 Minn. 162, 170, 245 N.W.2d 869, 873 (1976). Our holding is confined to the issue before us, the plaintiff's burden in responding to a defendant's motion for summary judgment in a legal malpractice case in which a claim was allegedly foregone.

material fact as to each element. The court of appeals found that Rouse had shown a genuine issue of material fact on each element of the defamation claim and reversed the summary judgment in favor of the defendant lawyers. Because we find that Rouse has not produced sufficient evidence to create a fact issue as to the publication element of defamation, we reverse.[7]

 To be defamatory, a statement must be communicated to someone other than the plaintiff. *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 886 (Minn.1986). The traditional rule was that plaintiffs could not recover for defamation if they themselves communicated the statement to a third person. *Id.* In *Lewis*, we created an exception to that rule and held that the publication requirement may be satisfied where the plaintiff was compelled to publish a defamatory statement to a third person if it was foreseeable to the defendant that the plaintiff would be so compelled. *Id.* at 888. The employees in *Lewis* had no reasonable means of avoiding publication of the defamatory statement when they were asked by prospective employers to identify the reasons they were discharged. *Id.*

 Rouse argues that he has put forward sufficient evidence to create a fact dispute as to whether he was compelled to publish Iverson's statement in subsequent interviews for employment. The only evidence Rouse has provided is his own deposition testimony, during which he submitted a list of thirteen companies where he interviewed. Rouse remembered some details about the interviews, such as roughly where the companies' offices were located and, in a few cases, whether he interviewed with a man or a woman. However, he could not provide names of interviewers nor provide any documentary evidence of having filled out applications, sent resumes or received rejections. We hold that Rouse has not met his burden on the element of publication and we therefore re-

verse the court of appeals' conclusion that a genuine issue of material fact exists on this element of the defamation action.[8]

Because there was no genuine issue of material fact on an element of the defamation action for which Rouse, the non-moving party, had the burden of production, Rouse could not have survived a summary judgment motion in the underlying defamation action. The employer would have been entitled to judgment as a matter of law on the foregone defamation claim. We therefore affirm summary judgment for the defendant lawyers in this case on the issue of causation.

Reversed, and judgment in favor of defendants reinstated.

ANDERSON, J., took no part in the consideration or decision of this case.

---

7. While we agree with the court of appeals that a genuine issue of material fact exists regarding the truth of the allegedly defamatory statements, an untrue statement is not defamatory unless it is published. *Stuempges*, 297 N.W.2d at 255.

8. Having concluded that Rouse did not show a genuine issue of material fact on the issue of publication, we do not need to reach the defense of privilege that the lawyers assert protected the former employer's statements.